CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

5/29/2020

JULIA C. DUDLEY, CLERK
BY:   s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

JANE DOE,

*Plaintiff*,

v.

BEDFORD COUNTY, VIRGINIA,

*Defendant.*

CASE NO. 6:19-cv-00043

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on Defendant Bedford County's motions to claw back from Plaintiff Jane Doe a purportedly privileged report prepared during an internal investigation and for a protective order preventing any further dissemination of its contents. Dkts. 15, 29, 30. For the following reasons, the Court will deny Bedford County's motions to claw back the purportedly privileged document, Dkt. 15, 30, but will grant Bedford County's motion for leave to file the amended claw back motion, Dkt. 29.

**Background**

1.   Investigation and Creation of Report

In early 2018, after then-Bedford County Administrator Carl Boggess was "advised of a potential inappropriate relationship between a County employee and a volunteer rescue squad member," he determined "it was in the County's best interest to conduct an internal investigation to determine whether there was a broader concern in the department that needed to be uncovered and addressed."[1] Boggess retained a labor and employment law attorney in Roanoke, Victor

---

[1] Dkt. 31-1 ("Boggess Decl.") ¶ 3.

Cardwell, in February 2018, "to advise the County on the best course of action and on the prospects of future litigation."[2] Bedford County Attorney Patrick Skelley attested that he "played no active role in the County's internal investigation" or in the subsequent preparation of the report "because the County retained the services of outside counsel for that purpose."[3]

Boggess suggested to Cardwell that Sergeant Bryan Neal, Bedford County Sheriff's Office, conduct the investigation based on Boggess's prior familiarity with Neal's work product, and Cardwell agreed.[4] Sergeant Neal received a "temporary duty assignment to conduct an internal investigation on behalf of the County."[5] Neal's "primary point of contact" was Boggess.[6] Nonetheless, Boggess "made it clear" to Neal that the investigation was being conducted for Cardwell, "an attorney hired by the County to assist in personnel matters and potential future litigation," and that the report was being prepared for, and should be sent solely to, Cardwell.[7] Cardwell retained Sergeant Neal on behalf of the County, and Sergeant Neal conducted the investigation as requested.[8] Cardwell confirmed that "Sergeant Neal's investigation and the resulting report were done at my request and under my guidance."[9]

---

[2] Boggess Decl. ¶ 4; Dkt. 31-2 ("Neal Decl.") ¶¶ 2–3.

[3] Dkt. 31-3 ("Skelley Decl.") ¶ 3; *see also* Boggess Decl. ¶ 4.

[4] Boggess Decl. ¶ 5.

[5] Neal Decl. ¶ 2.

[6] Neal Decl. ¶ 3.

[7] Neal Decl. ¶¶ 3–4.

[8] Boggess Decl. ¶¶ 5–8; Neal Decl. ¶¶ 2–4.

[9] *See* Dkt. 78-2 ("Cardwell Decl.") ¶ 5 (submitted in open court, and filed subsequently attached to the County's Response to Plaintiff's First Motion to Compel, Dkt. 78-2). Although counsel for the County did not file Cardwell's declaration with their privilege briefs, the Court has considered it in the interests of completeness.

Boggess candidly admitted that "[o]ne of the foremost goals in having this investigation conducted under the direction and guidance of outside counsel was to preserve the product of the investigation" from disclosure, under the attorney-client privilege and work-product protection.[10] Boggess further explained that "[t]he County needed to determine if there was a problem within its ranks and have the freedom to address problems, if the investigation revealed any problems, in a confidential manner with the guidance of counsel." *Id.*

On April 25, 2018, Sergeant Neal issued his report (the "Report").[11] The Report bears the following designation on the top of the first page: "Prepared for Victor O. Cardwell, Esq. This report is confidential; subject to the Attorney-Client Privilege; and the attorney work-product immunity."[12]

Sergeant Neal sent the Report solely to Cardwell,[13] who then sent it Boggess, who kept one copy of the Report in his office, though he does not state the location of the file or who would have had access to it or his office.[14] Boggess shared the Report with the then-Deputy County Administrator Reid Wodicka at an unknown time.[15] Boggess also gave a "verbal executive summary of the findings"—but not a copy of the Report itself—to the Director of Human Resources, the Board of Supervisors in closed session, Chief Jack Jones, and the County Attorney.[16] Boggess warned them that the Report was confidential and not to disclose it.[17]

---

[10] Boggess Decl. ¶ 6.

[11] Dkt. 41; Dkt. 31 at 2; Dkt. 31-2 at 5.

[12] Neal Decl. ¶ 7; Dkt. 41.

[13] Cardwell Decl. ¶ 6.

[14] Neal Decl. ¶ 8; Boggess Decl. ¶¶ 9, 12.

[15] Boggess Decl. ¶ 9; Dkt. 31-2 at 4; *see also* Cardwell Decl. ¶ 7.

[16] Boggess Decl. ¶¶ 10–11.

[17] Boggess Decl. ¶¶ 10–11.

On March 15, 2019, Boggess emailed a copy of the Report to Robert Hiss, new County Administrator, and to the County Attorney.[18] Boggess stated that was the only time he sent a copy of the Report electronically.[19] The County Attorney attested that he received the email with the Report from Boggess, but that he did not at that time review it.[20]

2.  Virginia State Court Proceedings

In June 2018, Larry Scott Hawkins, a Field Lieutenant of the Bedford County Fire and Rescue Department, was indicted in Bedford County Circuit Court for felony computer solicitation in violation of Va. Code § 18.2-374.3, as well as misdemeanor assault and battery, in violation of Va. Code § 18.2-371.[21] In the criminal case, Hawkins' counsel filed a motion to compel seeking an order from the state court "to order the Bedford County Administrator to produce and comply with the request for the results of the internal investigation on sexual harassment/sexual misconduct in this case immediately."[22] Boggess was summoned to testify in court on the issue, and he testified "as to the nature of the document and the steps taken to maintain the attorney-client privileged [sic] associated with the document."[23] The court allowed Hawkins' counsel to

---

[18] Boggess Decl. ¶ 13.

[19] Boggess Decl. ¶ 13.

[20] Skelley Decl. ¶ 8.

[21] It appears that the Bedford County Sheriff's Office's criminal investigation into Hawkins lasted about four months, and Neal's investigation occurred during that period. *See* Dkt. 33-1 ("Bowman Decl.") ¶ 4.

[22] Bowman Decl. ¶ 8; Dkt. 33-1 at 16.

[23] Boggess Decl. ¶ 14.

withdraw the motion before it was ruled upon.[24] Hawkins later pleaded guilty to both counts in May 2019 and was sentenced to a ten-years' incarceration, with seven years suspended.[25]

Counsel for the Plaintiff Jane Doe in this case represented Plaintiff in bringing a civil suit against Hawkins for sexual harassment and assault, in Bedford County Circuit Court.[26] *See Jane Doe v. Larry Scott Hawkins*, No. 19-61 (Bedford Cir. Ct., filed Jan. 7, 2019). On March 25, 2019, in connection with Plaintiff's case in Bedford County, Plaintiff's counsel issued third-party subpoenas *duces tecum* to Bedford County Administrator and Human Resources Department.[27] Pursuant to that subpoena, Plaintiff's counsel sought "any and all records and/or reports of investigations conducted in the period after February 10, 2018 regarding allegations that the Bedford County Fire & Rescue Department was a hostile work environment."[28] Plaintiff's counsel also sought "the employment file of Larry Scott Hawkins," and "any and all records and/or reports of investigations conducted in the period after January 1, 2011 regarding allegations of misconduct by Larry Scott Hawkins."[29]

On or about April 10, 2019, after collecting documents from the County Administrator and the Human Resources Department, the County Attorney responded to the subpoenas *duces tecum*.[30] The County Attorney's letter response states simply: "Per the Subpoena Duces Tecum issued on the County Administrator for the County of Bedford, as well as the Human Resources

---

[24] Boggess Decl. ¶ 14; Bowman Decl. ¶ 10; Dkt. 33-1 at 21 (Circuit Court Order).

[25] Dkt. 33-1 at 12 (copy of Bedford County Circuit Court, Case No. CR18000177, dated August 22, 2019).

[26] Bowman Decl. ¶ 14; Dkt. 33-2 ("Moses Decl.") ¶ 3.

[27] Bowman Decl. ¶ 19; Dkt. 33-1 at 28–33; *see also* Skelley Decl. ¶ 4.

[28] Bowman Decl. ¶ 19; Dkt. 33-1 at 32.

[29] Dkt. 33-1 at 29.

[30] Skelley Decl. ¶ 5.

Department for the County of Bedford, I enclose all documents requested in regards to the above-styled case," referencing Plaintiff's Bedford County Civil Case against Hawkins.[31] No documents were identified in the letter as withheld for privilege. The County Attorney attested that he produced all documents received by him from the subpoenaed departments and that none were withheld for privilege, since, after he conducted an "initial review, it appeared that none of the documents produced by the County Administrator or human resources department were privileged.[32]

Plaintiff's counsel Gary Bowman submitted a declaration that, in the subpoena response on April 10, 2019, the Report was the first document produced to him.[33] So too have his co-counsel Easter Moses,[34] and Plaintiff and Plaintiff's father, submitted declarations echoing that the Report was received in the April 10, 2019 subpoena response.[35] Plaintiff's counsel subsequently introduced the Report as an exhibit at a deposition of Chief Jones in Plaintiff's Bedford County Circuit Court civil case against Hawkins.[36] The deposition took place at the County Attorney's office, and the County Attorney made an appearance at the deposition.[37] The County Attorney did not object to the introduction of the Report as an exhibit or otherwise raise a claim of privilege—indeed, the County Attorney referred to the Report in his questions to Chief Jones.[38]

---

[31] Dkt. 33-1 at 35 (Apr. 10, 2019, Letter from P. Skelley, County Attorney, to G. Bowman).

[32] Skelley Decl. ¶ 6.

[33] *See, e.g.*, Bowman Decl. ¶¶ 13, 22, 23, 24, 35.

[34] Moses Decl. ¶¶ 2, 5, 6.

[35] Dkt. 33-3 ("Jane Doe Decl.") ¶ 2; Dkt. 33-4 ("Doe's Father's Decl.") ¶¶ 5–11.

[36] Bowman Decl. ¶¶ 26–27; Dkt. 33-1 at 40–47 (deposition transcript excerpt, showing introduction of Report as exhibit).

[37] Dkt. 33-1 at 40–41 (caption for deposition and showing appearance by County Attorney).

[38] Dkt. 33-1 at 42–46; *see also* Bowman Decl. ¶ 29; Skelley Decl. ¶ 7.

3.   Initiation of Federal Court Proceedings

On June 28, 2019, Plaintiff filed the original Complaint in this case against Bedford County and Chief Jones. Dkt. 1. Plaintiff brought a claim pursuant to 42 U.S.C. § 1983 against Bedford County for the County's "de facto policy of deliberate indifference to the rights of volunteers" in the Department of Fire & Rescue "to be free from sexual harassment, abuse, and assault," among other allegations. *Id.* ¶¶ 38–85. Plaintiff also brought claim pursuant to § 1983 and Virginia state law against Chief Jones. *Id.* ¶¶ 86–117. Significantly, the original Complaint cited "the county's own internal investigation report," and extensively quoted from the Report, including block quotes.[39] The County Attorney was personally served with the Complaint on July 2. Dkt. 6.[40]

On July 24, 2019, the day after Bedford County responded to the original Complaint by filing a motion to dismiss, the County filed its first "Motion to Clawback Privileged Document, Motion to Strike, and Motion for Protective Order," pursuant to Rule 502(b) of the Federal Rules of Evidence, and Rules 26(b)(5) and 26(c) of the Federal Rules of Civil Procedure. Dkt. 15 ("First Clawback Motion"). However, because the First Clawback Motion was not accompanied by a brief in support of the motion and did not provide enough legal argument to demonstrate why the relief requested was warranted, on August 6, 2019, the Court ordered Bedford County to show cause on or before August 13, 2019, why the motion should not be denied for failure to follow the local rules. Dkt. 24.

On August 13, 2019, Bedford County filed a response to the Court's show cause order. Dkt. 29. Bedford County asserted that counsel acted with a genuine if mistaken belief that the facts

---

[39] *See e.g.*, Dkt. 1 ¶¶ 59–66.

[40] In October 2019, Plaintiff subsequently filed an Amended Complaint with leave of Court, which solely raised a § 1983 claim against the County, thereby removing Chief Jones as a defendant in the case. Dkt. 46. The Amended Complaint also removed numerous references to and quotes from the Report.

included in the First Clawback Motion and citations to the Federal Rules would have provided the legal basis upon which the motion was filed. *Id.* at 3. In addition, Bedford County also argued that allowing it to file an amended motion would result in no prejudice to Plaintiff, and it claimed that good cause existed to allow the County to amend its motion to provide "greater detail and more significant legal authority." *Id.* at 3–4.

That day, Bedford County filed an Amended Motion to Clawback Privileged Document, as well as a brief in support of the motion. Dkt. 30 ("Amended Clawback Motion"); Dkt. 31. On August 27, 2019, Plaintiff filed an opposition to Bedford County's Motion for Leave to file an Amended Clawback Motion. Dkt. 33. The County filed a reply in further support of its motion for leave to amend. Dkt. 37. Both parties attached numerous declarations in support of their positions. The Court subsequently heard argument on the County's motions, and the matter is ripe for disposition.

## Applicable Law

The party claiming attorney-client privilege has the burden of demonstrating that it applies and that the privilege was not waived. *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)); *Deel v. Bank of Am., N.A.*, 227 F.R.D. 456, 458 (W.D. Va. 2005). The party claiming work-product protection similarly bears the burden of demonstrating that it is applicable. *Solis v. Food Emps. Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011).

The attorney client privilege applies if

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Subpoena*, 341 F.3d at 335.

Work-product protection applies if the materials in question were "(1) prepared by, or under the direction of, an attorney and (2) was prepared in anticipation of litigation." *Rambus, Inc. v. Infineon Techs, AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004). A document "must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation" in order to warrant work-product protection; "materials prepared in the ordinary course of business" or for "other non-litigation purposes" do not qualify. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Inc.*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis in original).

A party may waive privilege and thus expose to discovery otherwise protected materials by disclosing such materials. *See, e.g.*, *In re Grand Jury Subpoena*, 341 F.3d at 335. But not all disclosures result in waiver. Rule 502(b) of the Federal Rules of Evidence provides that disclosure does not operate as a waiver in a federal or state proceeding if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Rule 502(c) provides that a disclosure made in a state proceeding does not operate as a waiver in a federal proceeding if the disclosure "would not be a waiver under this rule if it had been made in a federal proceeding," or if the disclosure "is not a waiver under the law of the state where the disclosure occurred." For its part, Rule 502(b) "does require the producing party to follow up on any obvious indications that a protected

9

communication or information has been produced inadvertently." Advisory Committee Notes (Nov. 28, 2007).[41]

## Analysis

The Court need not decide whether the Report was protected by attorney-client privilege or work-product protection because, assuming it were protected by both, the County waived the privilege and protection.[42]

---

[41] The parties have cited both federal law and state law authorities with respect to application of the privilege or protection and any waiver thereof. *See, e.g.*, Dkt. 31, at 8–9, 15; Dkt. 33 at 13– 14; Dkt. 37 at 2–4, 8–9. Generally, as this is a civil case based on a federal cause of action, under Rule 501 of the Federal Rules of Evidence, the Court applies "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *See also Hawkins v. Stables*, 148 F.3d 379, 832 (4th Cir. 1998) (same); *see also State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, 225 F. Supp. 3d 474, 483 (D.S.C. 2016) ("Federal law governs the work product doctrine.").

However, the Court concludes that the initial disclosure was made in a state proceeding, namely, the County's April 10, 2019 response to Plaintiff's counsel's subpoena in relation to a Circuit Court case in Bedford County. As a result, Fed. R. Evid. 502(c) would apply, which governs disclosures made in state proceedings and provides that inadvertently disclosed material would be protected if *either* state or federal law would protect it. The parties agree Rule 502(c) applies. *See* Dkt. 31 at 5; Dkt. 33 at 14. The Court will therefore consider both federal and state law. In any event, the parties do not argue, and the Court does not find, that any material difference exists with respect to applicable law. Indeed, a key Virginia case cited by the County relies heavily on federal court precedent, upon which the County also relies. *See Walton v. Mid-Atl. Spine Specs., P.C.*, 694 S.E.2d 545, 551–52 (Va. 2010); *see also* Dkt. 31 at 15–16 (citing *Walton* and cases upon which *Walton* relied).

[42] At the outset the Court will grant the County's Motion for Leave to File an Amended Motion. Dkt. 29. The County timely responded to this Court's Show Cause Order, which directed the County to explain why a fulsome brief in support of its First Clawback Motion was not filed in the first instance. *See* Dkt. 24 (Show Cause Order). Counsel for the County gave an explanation for the failure to file a brief originally, timely complied with the Court's Show Cause Order, and the Court finds that granting the motion and allowing the County to file and the Court to consider the Amended Clawback Motion will not prejudice Plaintiff. In making this limited ruling, the Court does not address issues of the timing of the County's filing its First Clawback Motion, or the timing by which the County asserted claims of privilege or protection, which are addressed more fully elsewhere in this opinion.

1.   <u>The Report Was Inadvertently Disclosed</u>

At the outset, the parties dispute whether the Report was "inadvertently" or "involuntarily" disclosed to Plaintiff's counsel, or indeed, "intentionally" and "voluntarily" disclosed as Plaintiff contends. Dkt. 31 at 15–18; Dkt. 33 at 13–17; Dkt. 37 at 7–10.

A party can "inadvertently" disclose a confidential or privileged document under Virginia law, by either "knowingly, but mistakenly, producing a document," or by "unknowingly providing access to a document by failing to implement sufficient precautions to maintain its confidentiality." *Walton v. Mid-Atl. Spine Specs., P.C.*, 694 S.E.2d 545, 551–52 (Va. 2010) (considering waiver of attorney-client privilege). On the other hand, "involuntary" disclosure means "another person accomplished the disclosure through criminal activity or bad faith, without the consent of the proponent of the privilege." *Id.* at 551. *See also Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15-cv-57, 2017 WL 4368617, at *6 (W.D. Va. Oct. 2, 2017) (Jones, J.) (citing *Walton* for argument on waiver of privilege).

There is a "dearth of authority in the Fourth Circuit, and in federal law generally, as to the definition of an 'inadvertent disclosure' within the meaning of Rule 502." *Id.* at *9 (considering separately waiver of work product privilege under Rule 502(b) following "inadvertent disclosure"). However, limited authority on the issue affords a like interpretation of "inadvertent disclosure." *See, e.g.*, *id.* (citing definition of "inadvertence" as "[a]n accidental oversight; a result of carelessness," Black's Law Dictionary (10th ed. 2014)); *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 255 (E.D. Va. 2012) ("an accidental waiver would occur when a document, which a party intended to maintain as confidential, was disclosed by accident such as a misaddressed communication to someone outside the privilege scope") (citation omitted).

11

The Court finds, regardless whether privilege or work product protection applies, that the County inadvertently disclosed the Report to Plaintiff's counsel. Plaintiff's evidence convincingly demonstrates that Plaintiff's counsel received their first and only copy of the Report included in the County's April 10, 2019 production in response to Plaintiff's counsel's subpoena to the Bedford County Custodian of Records. Plaintiff, Plaintiff's father, and both of Plaintiff's counsel submitted declarations under penalty of perjury to that effect.[43] Plaintiff's counsel were the recipients of the County's subpoena response letter and production, and the most direct evidence of what they received from the County shows that it included the Report.

The County's first response to this evidence was to suggest that it initially "had reason to be concerned" that Plaintiff's father, then-employed by the Bedford County Sheriff, "obtained and provided the plaintiff's attorney with a copy of the report without authorization from the County."[44] To be plain, no evidence supports that assertion. Plaintiff's father has submitted a declaration under penalty of perjury stating unequivocally that he did not take or obtain the Report "from anyone, including Bedford County and the Bedford County Sheriff's Office."[45] And Plaintiff's counsel unambiguously attested, also under penalty of perjury, that they had received the Report in the April 10, 2019 production from Bedford County.[46] To be sure, Plaintiff's father

---

[43] *See* Bowman Decl. ¶ 35 ("I have not been provided a copy of the internal investigation report by anyone other than the County Attorney, Skelley, when he mailed it to me on April 10, 2019."); *id.* ¶¶ 13 (attesting Plaintiff's counsel first received Report in County Attorney's response to subpoena issued to Bedford County Custodian of Records), 22, 23, 24; Moses Decl. ¶ 5 ("Neither Bowman nor I received a copy of the report from anyone until Bedford County Attorney Patrick J. Skelley II sent Bowman a copy of the report in response to the Subpoena Duces Tecum Bowman had issued to the Bedford County Custodian of Records."); *id.* ¶¶ 2, 5, 6; Jane Doe Decl. ¶ 2; Doe's Father's Decl. ¶¶ 5–11.

[44] Dkt. 31 at 3.

[45] Doe's Father's Decl. ¶ 6.

[46] *See, e.g.*, Bowman Decl. ¶¶ 13, 22, 23, 25, 35; Moses Decl. ¶ 5.

was *aware* of the Report. He walked into Sergeant Neal's office and asked (or demanded) a copy of the Report, and Neal refused, citing privilege.[47] Indeed, there is little in dispute about this event. The Court credits Doe's Father's version that, as he left Neal's office, he said something to the effect that his "*daughter's attorney* 'will get [the Report],'"[48] which follows naturally from Neal's statement that he would "only be turning [the Report] over if a judge ordered [him] to do so."[49] Regardless of what exactly was said, even under Neal's version, Doe's Father's words were ambiguous and do not undermine the uniform evidence that the Report was included in the County's April 10, 2019 production. And the County has submitted no contrary evidence that Doe's Father took the Report or gave it to Plaintiff's counsel.

The County's second contention is that the Report was simply not included in the April 10, 2019 production (even inadvertently). The County Attorney's office "maintains copies of all responses to FOIA requests and subpoenas *duces tecum*," and, after "review[ing] the County's response to [Jane] Doe's subpoena," the County Attorney found the Report "was not contained in the response."[50] Further, the County Attorney wrote that his assistant who helped prepare the response "confirmed that she did not see a copy of the report at any time before the response was submitted to counsel." *Id.* Accordingly, "[t]o the best of [the County Attorney's] knowledge, based on an investigation, the County did not disclose or disseminate the [Report] in response to Doe's subpoena *duces tecum*." *Id.* ¶ 11.

The Court does not doubt the testimony cited by the County that a copy of the Report was not included in their copy of the subpoena response. Again, that evidence of the County's copy of

---

[47] Neal Decl. ¶ 10; Doe's Father's Decl. ¶ 11.

[48] Doe's Father's Decl. ¶ 11 (emphasis added).

[49] Neal Decl. ¶ 10.

[50] Skelley Decl. ¶ 10.

the production is less persuasive and probative on the point than Plaintiff's evidence about what they received, which uniformly states that the Report *was* included. The Court is not persuaded by the County Attorney's assertion that: "no one can state how the document came to be in Doe's possession."[51] It came into their possession from the County's April 10, 2019 subpoena response to Plaintiff's counsel.

The County Attorney contends that there must have been a "leak" of the Report but fails to offer any evidence on "the source of the leak."[52] The Court finds it more likely that the Report was included in the response by accident rather than subterfuge. Sergeant Neal emailed the Report to Mr. Cardwell,[53] who forwarded it to then-County Administrator Boggess,[54] who kept one copy of the written Report in a file in his office (but does not describe who had access to the file or his office),[55] and also sent a copy of the Report (at an unknown time) to the then-Deputy County Administrator,[56] and then emailed a copy of the Report to the new County Administrator and to the County Attorney, for their files on March 15, 2019.[57] The Report was circulated at least that widely by the time Plaintiff's counsel issued a subpoena *duces tecum* to the Custodian of Records, Bedford County Department of Human Resources, on March 25, 2019. This subpoena specifically requested, among other things, "any and all records and/or reports of investigations conducted in the period after February 10, 2018 regarding allegations that the Bedford County Fire & Rescue

---

[51] Skelley Decl. ¶ 11.

[52] Skelley Decl. ¶ 11.

[53] Neal Decl. ¶¶ 8, 9.

[54] Boggess Decl. ¶ 9.

[55] Boggess Decl. ¶ 12.

[56] Boggess Decl. ¶ 9.

[57] Boggess Decl. ¶ 13.

Department was a hostile work environment" based on gender.[58] That request would quite clearly encompass the Report.

In preparing the response to this subpoena, the County Attorney "collected documents from the County Administrator and human resources department,"[59] and the County's own evidence establishes that electronic and paper copies of the Report were at that time at least found in the files of the County Administrator,[60] which sent materials to the County Attorney in response to the subpoena. The County's declarations do not describe *who* was involved in searching the County Administrator's files or those of the County's human responses department in order to respond to the subpoena.[61] Nor do they describe *what instructions*, if any, the County Attorney gave to the subpoenaed departments.

Considering that the County Attorney was aware of and had received a copy of the Report by that time,[62] and that the subpoena was asking for the Report, the Court finds it significant that that the County Attorney and the responding departments do not appear to have discussed that the Report was responsive to the subpoena, but that they considered it privileged. A fulsome subpoena response would have done just that. Instead, the County Attorney "produced all documents that had been submitted to [him] by the subpoenaed departments."[63] The County Attorney did state that he performed an "initial review" of responsive documents, upon which "it appeared that none

---

[58] Bowman Decl. ¶ 19; Dkt. 33-1 at 32.

[59] Skelley Decl. ¶ 5.

[60] Boggess Decl. ¶¶ 8, 9, 12, 13.

[61] While the County Attorney stated at one point, "I collected documents from the County Administrator and human resources department," elsewhere he stated that documents were in fact "submitted to [him] by the subpoenaed departments." Skelley Decl. ¶ 6.

[62] Boggess Decl. ¶ 13; Skelley Decl. ¶¶ 3, 4, 8.

[63] Skelley Decl. ¶ 6.

of the documents produced by the County Administrator or human resources department were privileged."[64] The failure of the subpoena response to even identify the Report as responsive but withheld for privilege, casts further doubt on the rigor of the collection and review process, which the County Attorney asserts would have caught the Report before it was produced.

At bottom, the evidence describes a document collection and production process in which the files of a department in the County were searched to respond to a subpoena that requested the Report, where the department had paper and electronic copies of the Report, and where there is no evidence in the record about the scope, instructions, or manner of the search. After that, the County Attorney responded to Plaintiff's counsel on April 10, 2019 with a production of all responsive documents, and Plaintiff's counsel thereafter received a copy of the Report with the County's response.[65] The evidence in the record establishes an inadvertent disclosure, not involuntary disclosure or a "leak" by a person unauthorized to send it. *See, e.g.*, *Walton*, 694 S.E.2d at 551; *Harleysville*, 2017 WL 4368617, at *6, 9; *see also In re Grand Jury Subpoena*, 341 F.3d at 335 (proponent of attorney-client privilege has the burden of demonstrating that it applies and that the privilege was not waived); *Walton*, 694 S.E.2d at 549 (same).

2.   Any Attorney-Client Privilege or Work-Product Protection Were Waived

Having found that the Report was inadvertently disclosed to Plaintiff's counsel, the Court next considers whether such disclosure constituted a waiver of any attorney-client privilege or work-product protection. The Court need not decide whether the Report was privilege or covered by work-product protection, because, even if it were, the Court would conclude that the County waived any such privilege or protection.

---

[64] Skelley Decl. ¶ 6.

[65] Bowman Decl. ¶ 21; Dkt. 33-1 at 35.

The Court's assessment whether an inadvertently produced document has resulted in a waiver of the privilege or work-product protection is a fact-bound determination, "there is no bright line rule for what constitutes waiver." *Harleysville*, 2017 WL 4368617, at *5 (quoting *Walton*, 694 S.E.2d at 549). "[W]aiver may occur [through inadvertent disclosure] if the disclosing party failed to take reasonable measures to ensure and maintain the document's confidentiality, or to take prompt and reasonable steps to rectify the error." *Id.* at *6 (quoting *Walton*, 694 S.E.2d at 552) (alterations in *Harleysville*).

The Supreme Court of Virginia has instructed courts to consider five factors to determine whether there has been a waiver of privilege or protection under these circumstances: "(1) the reasonableness of the precautions to prevent inadvertent disclosures, (2) the time taken to rectify the error, (3) the scope of the discovery, (4) the extent of the disclosure, and (5) whether the party asserting the claim of privilege or protection has used its unavailability for misleading or otherwise improper or overreaching purposes in the litigation, making it unfair to allow the party to invoke confidentiality under the circumstances." *Walton*, 694 S.E.2d at 552. No factor is dispositive, and other factors may be relevant. *Id.* The standards articulated in *Walton* were implemented with the enactment of Va. Code § 8.01-420.7, which governs inadvertent waiver of attorney-client privilege and work product doctrine. *See Walton*, 694 S.E.2d at 553–54 & n.5. Section 8.01-420.7 largely tracks the language in Rule 502(b) of the Federal Rules of Evidence.

Rule 502(b) of the Federal Rules of Evidence provides that a disclosure "does not operate as a waiver" of privilege or work-product protection if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." While some courts have applied the same five-factor test set forth

in *Walton* in making this inquiry under Rule 502(b), others have simply applied the three-factors set forth in the rule itself. *See Harleysville*, 2017 WL 4368617, at *10.

The Court will first apply the factors in *Walton*,[66] and then those in Rule 502(b). Regardless of the standard applied, the Court concludes that the County has waived its claim to privilege and protection in its inadvertently produced Report.

        A.  *Time Taken To Rectify the Error*

The County not only waited a substantial amount of time before acting to rectify the error in its production of the Report to Plaintiff's counsel, but it had multiple, discrete opportunities to do so that would have moved a party diligently seeking to vindicate their rights to act. Instead, for forty days, the County did not act. While Plaintiff's counsel received a copy of the Report on or about April 15, 2019, the Court finds that the first significant later date which should have alerted the County to act took place about two months later.

- *June 14, 2019*. Plaintiff's counsel deposed Chief Jones in the Bedford County Circuit Court case.[67] The County Attorney was present at the deposition.[68] Plaintiff's counsel introduced the Report as an exhibit.[69] Plaintiff's counsel questioned Chief Jones about the Report at the deposition, and the County Attorney mentioned it in his questions to Chief Jones as well.[70] At that time, the County Attorney did nothing to assert privilege over the Report during the

---

[66] The fifth *Walton* factor has no applicability to this case, as there is no indication at this time that Bedford County has used its assertion of privilege or the unavailability of the Report for "misleading or otherwise improper or overreaching purposes." *See Walton*, 694 S.E.2d at 552.

[67] Neither Chief Jones nor the County are parties in that case. Skelley Decl. ¶ 7.

[68] Bowman Decl. ¶ 26; Skelley Decl. ¶ 7 (describing deposition).

[69] Bowman Decl. ¶ 27; Dkt. 33-1 at 40–47 (deposition transcript excerpt, showing introduction of Report as exhibit).

[70] Bowman Decl. ¶¶ 27-29; Dkt. 33-1 at 40–47.

deposition of Chief Jones.[71] Of course, the County Attorney has stated that he informed Chief Jones and Plaintiff's counsel at the deposition that he "had never seen the report before." [72] The Court will accept that representation.[73] Still, as the County has noted, the Report states in bold letters on the top of page one: "Prepared for Victor O. Cardwell, Esq. This report is confidential; subject to the Attorney-Client privilege; and the attorney-work product immunity." Dkt. 31 at 2 ¶ 3. If Plaintiff's counsel was to have been on notice of its privilege based on that header, as the County argues, at least that much was required from the County.

After the deposition, the County Attorney "attempted to determine how [Plaintiff's] counsel received a copy of the report" and "to ascertain the source of the disclosure and whether privilege had been waived as to the document." Thereafter, he described efforts to "discover the source of the leak," and, attested that, when "it became clear that the County did not disclose the document … the County, by counsel, requested that all copies of the document be returned and electronic copies of the document be destroyed."[74]

---

[71] *See* Bowman Decl. ¶¶ 27 ("The County Attorney made no comment regarding a claimed privilege in the investigation report."); *id.* ¶ 29 ("I am certain that Skelley did not say to me that the County claimed a privilege in the investigation report …"); Skelley Decl. ¶ 7 (describing deposition without stating he had claimed privilege); Dkt. 33-1 at 42-47 (transcript excerpts showing introduction of the Report as exhibit, and questioning by Plaintiff's counsel and Skelley, without reflecting assertion of privilege).

[72] Skelley Decl. ¶ 7.

[73] The Court notes that the excerpts of the deposition transcript provided do not reflect that comment, and Plaintiff's counsel attested in his declaration that to the best of his recollection, he did not recall Skelley saying that he had never seen Report before. *See* Bowman Decl. ¶ 29; Dkt. 33-1 at 42–47.

[74] Skelley Decl. ¶¶ 9, 11, 13.

- *June 28, 2019*. The original Complaint was filed in this case. Dkt. 1. The Complaint made no secret that it was drawing heavily from "the county's own internal investigation report," and extensively quoted from the Report, including block quotes.[75]

- *July 2, 2019*. The County Attorney was personally served with the Complaint. Dkt. 6.

- *July 23, 2019*. On Bedford County's last day to answer or otherwise respond to the Complaint, it filed a motion to dismiss and accompanying memorandum, which did not mention any arguments pertaining to privilege or clawing back the Report. Dkt. 8, 9.

- *July 24, 2019*. Bedford County filed its First Clawback Motion. Dkt. 15. This is the first time Bedford County's counsel sought relief from the Court to protect its asserted privilege in the Report. The County's counsel emailed Plaintiff's counsel less than two hours before the filing. That was the first time Plaintiff's counsel heard from the County that it believed the Report was not intentionally produced to him.[76]

In other words, the County did not seek relief from the Court to protect its asserted privilege in the Report until *forty days* after Plaintiff's counsel used the Report as an exhibit at Chief Jones' deposition in front of the County Attorney; *twenty-six* days after the Complaint was filed against the County extensively citing the Report; and *twenty-two* days after the County Attorney was personally served with the Complaint. Each of these events marked a date when any party acting

---

[75] *See e.g.*, Dkt. 1 ¶ 59 (block quote); *id.* ¶ 61 ("A report of the investigation was issued on April 24, 2018 by the Bedford County Sheriff's Office, and was written by Sergeant Brian L. Neal of the Professional Standards Unit of the Sheriff's Office."); *see also id.* ¶¶ 59–66 (citing and quoting several of the Report's findings and conclusions).

[76] Bowman Decl. ¶ 34 (attesting that Ms. Royer, on behalf of the County, emailed Plaintiff's counsel on 5:05 p.m. on July 24, 2019, and the County filed its First Clawback Motion by 7:27 p.m. that day).

with reasonable diligence should have been moved to act, but the County was not. What is more, the County did not even alert Plaintiff's counsel of its intent to assert privilege until *forty days* after discovering that the Report was in his possession.

The Court finds that this substantial amount of "time taken to rectify the error" weighs heavily in favor of finding that the County waived such privilege or protection. Rather than taking "immediate action to attempt to maintain the privilege," the County waited more than a month before seeking relief from the Court. *See Walton*, 694 S.E.2d at 553 (finding support for the conclusion that privilege was waived, where doctors did not take "immediate measures … to protect the privilege," and "allowed a month to lapse before seeking relief from the circuit court in the form of a protective order"). These circumstances stand in contrast to those cases where a party who inadvertently disclosed a privileged communication acted to rectify the disclosure within a matter of "days." *See, e.g.*, *Harleysville*, 2017 WL 4368617, at *4 (finding attempts rectify erroneous disclosure within four days of discovery were reasonably prompt).

B.   *Reasonableness of Precautions Against Inadvertent Disclosure*

The Court next considers the "reasonableness of the precautions to prevent inadvertent disclosures." *Walton*, 694 S.E.2d at 552. The County has submitted evidence demonstrating that the number of persons within the County government with access to the Report was kept carefully limited, that the Report plainly stated on its cover that it was privileged and confidential, and that whenever its contents were otherwise orally conveyed or summarized, its confidentiality was communicated as well.[77] But, as stated above, the rigor of the County officials' adherence to this process is diminished considering the fact that a subpoena was issued directly targeting the Report, and the County Attorney continued with document collection and production responding to the

---

[77] *See, e.g.*, Boggess Decl. ¶¶ 8–13.

subpoena, but he did not advise Plaintiff's counsel of the existence of the Report and withhold it for privilege or protection. Rather, at least on this evidence, it seems that the issue simply did not arise. Thus, while this factor weighs against a finding of waiver, the Court concludes that it only weighs slightly in that direction.

### C.  *Scope of the Discovery*

On this evidence, the County's subpoena response did not require any significant amount of document collection, review, or production. Rather, the County Attorney was responding to three relatively targeted requests found in Plaintiff's counsel's subpoena. Since there is no indication this effort by the County involved any "massive exchange of documents" or "extensive discovery," under this factor, the County and its attorney are afforded "less leeway" regarding efforts which failed to prevent the Report from being inadvertently disclosed in the subpoena response. *Walton*, 694 S.E.2d at 552. This factor also weighs in favor of a finding of waiver.

### D.  *Extent of the Disclosure*

The last of the *Walton* factors relevant here concerns the "extent of the disclosure." *Walton*, 694 S.E.2d at 552, 554. The inadvertent disclosure by the County was initially only to Plaintiff's counsel, which would suggest the factor would not weigh in favor of a finding of waiver. *See Harleysville*, 2017 WL 4368617, at *8 (where privileged documents were disclosed to one party, this factor "does not weigh in favor of a finding of waiver"). The County, however, made no efforts to contain the extent of the disclosure once it was made known to them.

The Court cannot look past the fact that the County was aware of and failed to act in a timely way to prevent further disclosures of the Report. The County Attorney attended the deposition of Chief Jones on June 14, 2019, where Plaintiff's counsel introduced the Report as an exhibit and Plaintiff's counsel as well as the County Attorney questioned Chief Jones about the

Report. Moreover, on June 28, Plaintiff's counsel filed the original Complaint in this case that referenced and quoted from the Report, and he also served the County Attorney with the Complaint on July 2, 2019. Still, the County took twenty-two days to seek Court intervention. The Court will address arguments on the propriety of Plaintiff's counsel's actions below. But whether considered under this *Walton* factor, or in the context of "any other factors arising from the posture of the case," *Walton*, 694 S.E.2d at 522, the Court finds significant that the County made use of the purportedly privileged Report in a later deposition, and following a public filing of portions of the Report, waited twenty-two days without acting to seek relief from the Court. These actions and failures to act contributed to the dissemination of the information contained in the Report and support a finding of waiver.

The County argues that there could be no waiver of attorney-client privilege because "[i]t is not counsel's privilege to waive." Dkt. 31 at 8 (citing *Hawkins*, 148 F.3d at 384 n.4). The County continues that, "[o]n the facts of this case, the plaintiff asserts that the document was produced by the County Attorney in a stack of nonprivileged documents," while, "[t]he County, however, clearly intended to assert the attorney-client privilege," as on the privilege header. Dkt. 31 at 9. But the County's argument—*i.e.*, a production of documents from the County through the County Attorney to the opposing party could not waive the privilege—proves too much. For example, "failure to serve a compliant privilege log may result in a waiver of the privilege or protection." *Fint v. Brayman Constr. Corp.*, No. 5:17-cv-4043, 2018 WL 3097328, at *4 (S.D. W. Va. June 21, 2018). Or a counsel's failure to object with specificity to document requests on the basis of privilege or work product protection may waive the privilege. *See Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005) ("objections to document production requests must be stated with particularity in a timely answer," and "a failure to do so may constitute a waiver of grounds not

properly raised, including privilege or work product immunity," unless the Court "excuses this failure for good cause shown"). In any event, "waiver may occur if the disclosing party failed to take reasonable measures to ensure and maintain the document's confidentiality, or to take prompt and reasonable steps to correct the error." *Walton*, 694 S.E.2d at 552; *see also* Fed. R. Evid. 502(b) (holder of privilege or protection must have taken "reasonable steps to prevent disclosure" and "promptly take reasonable steps to rectify the error"). Here, on the facts of this case, among other things, the County Attorney and the County itself did not take prompt and reasonable steps to rectify the error as set out in *Walton* as well as Rule 502(b), *see infra*.

The Court finds that, on balance, and applying the *Walton* factors, the County waived any privilege or protection in the Report under Virginia law. The Court considers most significant in its analysis the substantial amount of time taken by the County to rectify the disclosure, which is not offset by the precautions it took to guard against inadvertent disclosure.

### E. *Federal Rule of Evidence 502(b) Factors*

The Court's analysis of the issue of waiver under Rule 502(b) largely tracks consideration of the *Walton* factors.

The Court already found that the disclosure was inadvertent. *See* Fed. R. Evid. 502(b)(1). Moreover, the County took "reasonable steps to prevent disclosure," Fed. R. Evid. 502(b)(2), including, as discussed above: limiting the number of persons with access to the Report; reminding those persons who were briefed on the Report about its confidentiality; and stating on the Report itself in bold font its purported privilege and confidentiality.

Critically, however, the Court finds that the County did not take "reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b)(3). The County did not file a motion with the Court to preserve the Report's

claimed privilege or confidentiality until *forty days* after Plaintiff's counsel used the Report as an exhibit at Chief Jones' deposition in front of the County Attorney; *twenty-six* days after the Complaint was filed against the County extensively citing the Report; and *twenty-two* days after the County Attorney was personally served with the Complaint. Those delays in acting fall short of the "reasonable steps to rectify the error" that Rule 502(b)(3) requires.

Accordingly, the Court also finds that under Fed. R. Evid. 502(b) and (c), the County has waived any claim to attorney-client privilege or work-product protection in the Report.

3.   The Parties' Conduct

The Court has therefore found that the Report was inadvertently disclosed to Plaintiff's counsel, and that the County waived any protection or privilege that attached to the Report. The County nonetheless argues that Plaintiff's counsel's conduct violated procedural rules and professional obligations, and that such conduct weighs against disclosure of the Report.

The County criticizes Plaintiff's counsel's actions after receiving the Report, which on its face purported to be privileged. Dkt. 37. The County argues that "the proper time" for Plaintiff's counsel "to have attacked the County's claims of privilege and [work product] immunity would have been prior to disclosing the excerpted portions of the document in a federal pleading," *i.e.*, the original Complaint. *Id.* at 2. The County argues that, upon Plaintiff's counsel's receipt of the Report, Rule 26 of the Federal Rules of Civil Procedure required Plaintiff's counsel, among other things, to "promptly return, sequester, or destroy the specified information and any copies" that they had, nor could counsel "use or disclose the information until the claim has been resolved." *Id.* at 3–4. The County further argues that the Virginia Rules of Professional Conduct and legal ethics opinions likewise proscribe a lawyer from "capitalizing on inadvertent disclosures of confidential information." *Id.* at 4.

To be sure, prudence would counsel in favor of proceeding cautiously upon receipt of material that bears a privilege designation. In some circumstances, action by the recipient may be required under the applicable rules of court or professional conduct. The County cites in support of its position Rule 4:1(b)(6)(ii) of the Rules of the Supreme Court of Virginia, which speaks to these issues,[78] as does Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure.[79] And so do Legal Ethics Opinions ("LEO") of the Virginia State Bar, including LEO 1702 and 1871, although these are merely cited as persuasive authority. *See* Dkt. 37 at 4 n.2.

But as these and other authorities show, the specific circumstances of the case matter. For example, LEO 1702 addresses counsel's obligations upon inadvertent receipt of confidential information from the opposing counsel. But notably, in the circumstances described, the receiving attorney "is able to recognize from the first paragraph of the transmission that the information *has been sent in error* and that it contains confidential information and work product" of opposing counsel. 1999 WL 348823, at *1 (emphasis added). The document was sent to the wrong fax number. *Id.* LEO 1702 also adopted ABA Formal Opinion 92-368 (1992), and that ABA opinion similarly addresses a situation in which a lawyer "receives materials that on their face appear to

---

[78] Rule 4:1(b)(6)(ii) states in full: "If a party believes that a document … that has already been produced is privileged or its confidentiality is otherwise protected the producing party may notify any other party of such claim and the basis for the claimed privilege or protection. Upon receiving such notice, any party holding a copy of the designated material shall sequester or destroy its copies thereof, and shall not duplicate or disseminate such material pending disposition of the claim of privilege or protection by agreement, or upon motion by any party. If a receiving party has disclosed the information before being notified of the claim of privilege or other protection, that party must take reasonable steps to retrieve the designated material. The producing party must preserve the information until the claim of privilege or other protection is resolved."

[79] "If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved," among other requirements. Fed. R. Civ. P. 26(b)(5)(B).

be subject to the attorney-client privilege or otherwise confidential, *under circumstances where it is clear they were not intended for the receiving attorney*." *Id.* (citing ABA Formal Opinion 92-368 (1992)) (emphasis added).[80] These opinions do not neatly overlay onto this case. Here, Plaintiff's counsel sent a targeted subpoena *duces tecum* to the County for "any and all records and/or reports of investigations conducted in the period after February 10, 2018 regarding allegations that the Bedford County Fire & Rescue Department was a hostile work environment," and in response, the County Attorney produced the Report, which bore a privilege header, but which was also directly responsive to that inquiry.[81] The only other file produced by the County in response to the subpoena was Hawkins' personnel file.[82] Then, in a deposition attended by the County Attorney, both Plaintiff's counsel and the County Attorney questioned the Fire Chief about the Report, and there was no objection or mention by the County Attorney that the document was privileged.

The Rules that the County cites, including Rule 4:1(b)(6)(ii) of the Rules of the Supreme Court of Virginia, do not solely impose obligations on the recipient, but also the party which inadvertently transmitted the privileged information as well. *See also* Fed. R. Civ. P. 26(b)(5)(B) ("the party making the claim may notify any party that received the information of the claim and the basis for it"). Here again, counsel for the County first contacted Plaintiff's counsel about this

---

[80] LEO 1871 addressed circumstances in which a plaintiff's lawyer served a request for production of documents, and in return, the defendant's lawyer "subsequently invited plaintiff's lawyer to his office to inspect the defendant's files." Then, while inspecting those files, plaintiff's lawyer found a memorandum by defense counsel summarizing interviews with defendant's employees and also indicating the suit had not been filed within the statute of limitations. 2013 WL 6151729, at *1.

[81] Bowman Decl. ¶¶ 23, 35.

[82] Bowman Decl. ¶ 22 ("Sergeant Neal's investigation report, dated April 24, 2018 was the item on top of the stack of documents attached to the County Attorney's letter. The other document in the package was Hawkins' personnel file.").

disclosure *forty days* after the County Attorney was indisputably made aware that Plaintiff's counsel had the Report at the deposition, but mere hours before filing its First Clawback Motion.

As concern the filings before this Court, counsel for Plaintiff would have been well advised to have sought a resolution of any question of privilege before making use of the Report in the original Complaint. However, where the party claiming privilege or work-product protection inadvertently produced the document to the opposing party and failed to act promptly to protect the privilege thereafter, as under the circumstances of this case, the Court concludes that the parties' arguments on the conduct of counsel do not support any other outcome on the merits than that which Court has already reached above, nor that other action or proceeding by the Court is required on the issue at this time.[83]

### Conclusion

For these reasons, in an accompanying Order, the Court will deny the County's motions to claw back the Report or otherwise seek a protective order preventing further dissemination of the Report, Dkt. 15, 30, but the Court will grant the County's motion for leave to file the amended claw back motion, Dkt. 29.

---

[83] Finally, the Court notes that Plaintiff has filed much later a Motion to Compel certain discovery from the County, including "a copy of any audio or video recordings of interviews" made by Sergeant Neal during his investigation that culminated in the Report, as well as seeking his written notes. Dkt. 69 at 5 (filed May 11, 2019). The Motion will be handled separately except to state that the County's opposition thereto raised arguments why the Report itself is privileged, or protected, and should not be produced. Dkt. 78 (filed May 25, 2020). The Court finds that such new arguments as they relate to the Report itself were not timely submitted or properly presented for the Court's consideration, including the County's new argument that the Report is protected as the work of a non-testifying expert. *See id.* at 6–7. Notwithstanding substantial briefing and argument, the County did not previously raise these arguments. Dkt. 15; Dkt. 31; Dkt. 37. Moreover, nothing in them undermines this Court's conclusions—for purposes of resolving these motions about the Report—that the County waived any privilege or protection that may have otherwise attached to the Report itself.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this ___29th___ day of May, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE